IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

ELIZABETH STARIN,

     PLAINTIFF                      05 Civ 5152 (VM)(DF)
                                   PLAINTIFF'S FIRST AMENDED
     vs                            COMPLAINT [JURY TRIAL]

THE CITY OF NEW YORK, a municipal
entity, NEW YORK CITY POLICE
OFFICER ABDIEL ANDERSON, individually
and in his official capacity, NEW YORK
CITY POLICE OFFICERS "JOHN DOES" and
"SALLY ROWES", individually and in
their official capacities, JOSEPH
ESPOSITO, individually and in
his official capacity as Chief of
the New York City Police Department,
RAYMOND KELLY, individually and in his
official capacity as New York City
Police Commissioner, JOHN J. COLGAN,
individually and in his official
capacity as Deputy Chief and Commanding
Officer at the Pier # 57 Detention
Facility, THOMAS GRAHAM, individually
and in his official capacity as Commanding
Officer of the New York City Police
Department Disorders Control Unit, BRUCE
SMOLKA, individually and in his official
capacity as an Assistant Chief in the
New York City Police Department and in
Patrol Borough Manhattan South, TERRENCE
MONAHAN, individually and in his official
capacity as an Assistant Chief in the
New York City Police Department, MICHAEL
BLOOMBERG, Mayor of the City of New York,
individually and in his official capacity,
JAMES ESSIG, individually and in his
capacity as a Deputy Inspector in the
New York City Police Department, GERALD
DIECKMANN, individually and in his
official capacity as a Deputy Inspector
in the New York City Police Department,

     DEFENDANTS
_____


## I.  INTRODUCTION

    1.  This is an action against the Defendant parties,

individually and collectively, for the violation of the
Plaintiff's federally guaranteed constitutional and civil rights
and her rights as otherwise guaranteed under the laws and
Constitution of the State of New York.

2.  This case arises out of the arrest of the Plaintiff,
Elizabeth Starin, on August 31, 2004 in the vicinity of Union
Square East and Irving Place or thereabouts at or about 7:00 P.M
and the subsequent preferral of charges associated therewith and,
related thereto, the Plaintiff's detention and the terms and
conditions of her detention and, in addition thereto, the
utilization of unnecessary, unreasonable and excessive force in
the form of excessive handcuffing; and, as well, the otherwise
punitive and retaliatory conduct and actions against the Plaintiff
because of her legitimate, reasonable, and protected speech
activities.

3.  The Plaintiff seeks monetary damages for her wrongful and
unlawful false arrest and for her malicious prosecution and for
her wrongful and unlawful detention and incarceration and for the
wrongful preferral of charges and the wrongful utilization of
unnecessary and unreasonable and excessive force and, otherwise,
for the unreasonable and unlawful manner and fashion and
conditions of the Plaintiff's detention and for the malicious
abuse of criminal process and for the retaliatory and punitive
conduct against the Plaintiff because of her reasonable and
legitimate and protected speech activities and for the denial of
medical care associated with her detention and imprisonment.

## II.  JURISDICTION

4.   Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 [3] and [4] in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution.

5.  Jurisdiction is also invoked pursuant to and under 28 U.S.C. Section 1367, entitled Supplemental Pendent Party and Pendent Claim Jurisdiction. The Plaintiff requests that the Court exercise its powers to invoke pendent claim and pendent party jurisdiction over and against the Defendant Officers in their individual capacities.

6.   The State law claims have a common nucleus of operative fact with the federally based claims and they arise out of the same transaction and occurrence giving rise to the Plaintiff's federally based claims and causes of action.

7.   The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff, while seeking monetary damages, also seeks declaratory and injunctive relief if such is deemed necessary and desirable and in the interest of justice.

8.   This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and

Constitution of the United States and the laws and Constitution of the State of New York.

### III. PARTIES

9.    The Plaintiff is an American citizen and resident of the City of New York, the County of New York, the State of New York.

10.    The Defendant City of New York is a municipal entity existing pursuant to and under the laws and Constitution of the State of New York.

11.    Defendant Michael Bloomberg is the Mayor of the City of New York.

12.    Defendants Abdiel Anderson, "John Does" and "Sally Rowes" are New York City Police Officers. Joseph Esposito is the Chief of the New York City Police Department.  Raymond Kelly is the New York City Police Commissioner.  Thomas Graham, Bruce Smolka, John Colgan, and Terrence Monahan and James Essig and Gerald Dieckmann are all high ranking New York City Police Department command officers who, along with Defendants Kelly and Esposito and Defendant Bloomberg, were responsible for the planning and oversight and implementation and sanctioning of the City of New York's Republican National Convention policing operations including the arrest and detention operations that were carried out and to which the Plaintiff was subjected. All of the Defendants are sued in their individual and official capacities. Notwithstanding the wrongful and illegal nature of their acts and conduct as hereinafter described, they were taken in and during

the course of their duties and functions as employees and agents
of the City of New York and incidental to the otherwise lawful
performance of the same.

IV.  ALLEGATIONS

13.    The Plaintiff is Elizabeth Starin.

14.    The Plaintiff is twenty six years of age.

15.    The Plaintiff's birth date is December 2, 1978. The
Plaintiff was born in Secaucus, New Jersey.  The Plaintiff lived
in Jersey City, New Jersey as an infant; in Bloomfield, New Jersey
as a child; and, then, in Rockville, Maryland where she attended
and graduated from high school.

16.  The Plaintiff completed a bachelor's degree from Brown
University in December, 2001. The Plaintiff was awarded her
bachelor's degree in May, 2002. Subsequent to her graduation from
Brown University, the Plaintiff interned at the Smithsonian
Environmental Research Center.

17.    Thereafter, the Plaintiff did one year of service in an
elementary school in Burlington, Vermont as part of the Americorps
program.  The Plaintiff remained in Vermont for a brief period of
time after concluding her Americorps service and, then, to New
York City in March, 2004.

18.    The Plaintiff worked for HarperCollins Children's Books
until September, 2004 when she left that position for a position
for another position with a small publishing company, Junior
Library Guild. The Plaintiff assumed her position as a book

reviewer with Junior Library Guild in October, 2004. She continues to be employed by Junior Library Guild.

19.  The Plaintiff is single.

20.  The incident which gives rise to this litigation occurred on Tuesday, August 31, 2004 commencing at or about 7:00 P.M. in the vicinity of Union Square East and 16th Street.

21.  The Plaintiff had arrived at the Union Square Park location to engage in reasonable and peaceful First Amendment protected speech demonstration activities related to the on going Republican National Convention meetings which were then on going in the City of New York and which Convention meetings had formally commenced and convened on Monday, August 30, 2004.

22.  On August 31, 2004 the Plaintiff, along with a friend, Jessica Stein, was standing on the sidewalk east of Union Square on 16th Street.   Many other people were, as well, on the sidewalk.

23.  It is believed that, while the Plaintiff and others were so situated, New York City line Police Officers, under the authority and jurisdiction and authority and control of New York City Police Department command officers, appeared to hem in the Plaintiff and others on the block known as East 16th Street between Union Square East and Irving Place.

24.  The Plaintiff had simply been on the sidewalk observing what was transpiring prior thereto. In other words, people were demonstrating in the area and otherwise observing what was transpiring in the area.

25.   It is believed that the action of penning in the
Plaintiff and others was accomplished by the use of a netting at
one end of the block and a line of officers in riot gear at the
other end of the block.

26.   The police moved in onto the sidewalk at both the east
and west ends of the street.

27.   The police, who had moved in and completely penned in the
Plaintiff and the many others on the sidewalk, then directed the
Plaintiff and others to sit down.  The Plaintiff and others were
advised that they would eventually be allowed to leave.

28.   The police then began to arrest individuals including the
Plaintiff.

29.   Other than being directed to sit down, the Plaintiff
heard no other directives from police officers and certainly heard
no directions to leave to be subject to arrest.

30.   The police herded the Plaintiff and others onto the
sidewalk and directed them to sit down in order to prevent the
Plaintiff and others from leaving. The Plaintiff recalls asking
the police whether she was free to disperse to which the police
responded no.

31.   Then and without any legal or other reasonable basis or
justification for such, the police handcuffed the Plaintiff and
many others then in the block.

32.   The Plaintiff was "rear handcuffed" with plastic cuffs.

33.   The Plaintiff and others were than loaded onto a City bus

and transported to a facility known as Pier 57.

34. The Plaintiff was taken from the bus at the Pier 57 facility and brought inside to a cage.

35. The Plaintiff 's photograph was taken with Defendant Anderson.

36. The Plaintiff's belongings were confiscated.

37. Subsequent thereto, the Plaintiff and others were separated into other cages.

38. The facility floor was very dirty; and the Plaintiff's sinuses were burning from what appeared to be a toxic-chemical environment.

39. Eventually after about sixteen hours at the Pier 57 facility, the Plaintiff and others were taken from the Pier 57 Facility and transported to a facility at 100 Centre Street where the Plaintiff was placed in a series of group cells until she was finally brought to Court for her arraignment before a judge.

40. At the 100 Centre Street Central Booking Facility, the Plaintiff and others shared over-crowded cells/. They were forced, because of the over-crowding, to lie on the floor. They were denied access to counsel [until just before she appeared in Court for her arraignment] and were otherwise subjected to fingerprinting and photographing. Sleep was nearly impossible the entire time of the Plaintiff's detention, incarceration and imprisonment because of light, crowding, noise, cold, dirt. At some point and while at the Central Booking facility, the

Plaintiff was "daisy-chained" in a group of five and placed back into a holding cell.

41. Eventually, the Plaintiff appeared before a Judge.

42. The Plaintiff was presented at an arraignment on September 2, 2004 at or about 6:30.

43. The Plaintiff was charged with two counts of disorderly conduct [blocking traffic and refusing to disperse]; and one count of parading without a permit.

44. The Plaintiff was offered an adjournment in contemplation of dismissal which she accepted.

45. The Plaintiff did not sleep to any degree while imprisoned save for cat naps that may have totaled perhaps three hours.

46. The conditions of the Plaintiff's confinement, individually and collectively, were unreasonable, unnecessary, and excessive terms and conditions of her arrest and seizure and detention and they placed the Plaintiff at risk to her health, welfare and well being.

47. There was no probable cause or other reasonable basis for the Plaintiff's arrest, detention, and imprisonment at the time of her arraignment.

48. The Plaintiff was falsely arrested, detained, and imprisoned in retaliation for the legitimate exercise of her First Amendment protected speech activities.

49. The Plaintiff was arrested and imprisoned for the

collateral objective of punishing and retaliating against her for the exercise of her First Amendment protected speech activity.

50.  The Plaintiff was subjected, by the nature and extent of her handcuffing, to excessive, unreasonable, and unnecessary force.

51.  The Plaintiff was otherwise subjected to unreasonable, unnecessary, and excessive detention when, having been arrested, she was not released with a Desk Appearance Ticket or Summons, for which she was qualified and qualifiable, but rather detained and put through the system, the latter of which was not only unnecessary, unreasonable, and excessive, but, as well, punitive and designed to retaliate against the Plaintiff for the exercise of her First Amendment protected speech activity.

52.  The Plaintiff was otherwise subjected to unreasonable, unnecessary, excessive terms and conditions of detention and imprisonment and seizure by, among other things, unlawful and unnecessary and unreasonable fingerprinting, failure to provide holding cells which were not over-crowded and otherwise not environmentally toxic [the holding cells being vastly over-crowded and defined by chemical and toxic conditions that were harmful to the Plaintiff's welfare, health, and well being].

53.  The actions and conduct taken against the Plaintiff were the result of and were propelled by the policies, practices and customs of the City of New York.

54.  In expectation of demonstrations to be conducted by

individuals at the Republican National Convention, the Defendant
City of New York adopted policies, practices and customs which
propelled arrests where there was otherwise no basis for arrest
and, then, to excessively and unnecessary and punitively detain
the individuals, rather than to release individuals who were
qualified and qualifiable for release, after arrest, with Desk
Appearance Tickets or Summonses in a timely manner and fashion
[thereby, for all intent and purposes unnecessarily imprisoning
the individuals], and to subject them to excessive, unnecessary,
and unreasonably handcuffing and fingerprinting, and, then, to
imprison them in hostile, unreasonable, and unnecessary and health
detrimental conditions.

55. The policies and practices and customs adopted by the
City of New York and implemented by its agents and employees
during the Republican National Convention, propelled officers to
act outside of the bounds of constitutionally prescribed conduct
and to push the envelope thereby subjecting the Plaintiff, among
others, to false arrest, malicious prosecution, excessive and
unreasonable, and unnecessary force in the form of excessive
handcuffing, unnecessary and unlawful and unreasonable
fingerprinting and photographing, the denial of adequate medical
treatment, excessive detention, and detention and imprisonment in
hostile, health detrimental and welfare detrimental conditions.

56. The Defendant City's policies, practices, actions, and
conduct propelled thereby were predicated on the "ends justifies

the means" philosophy propelling the goal of keeping "order" at all costs even the cost of the knowing violation of an individual's constitutional rights. The policies, practices, customs and the actions and conduct propelled thereby were deemed a "cost of doing business", that is: in order to maintain order, the cost of violation the constitutional rights of individuals was permitted and authorized and allowed to take place.

57. The Plaintiff was subjected to false arrest, malicious abuse of criminal process, assault and battery, excessive detention, excessive handcuffing, unreasonable fingerprinting and photographing, health risk conditions of detention, and retaliation for the exercise of her State and federal constitutionally protected speech activity.

58. The actions and conduct taken against the Plaintiff were taken by agents and employees of the City of New York who were acting under color of law and who were otherwise "state actors". While their conduct and actions were wrongful, unconstitutional, and otherwise unlawful they were taken by the City's agents and employees in the course of their respective duties and functions and incidental to the otherwise lawful performance of the same. They were taken pursuant to and under the authority and responsibility of Defendants Dieckmann and Essig, each of whom, it is believed, was an "incident commander" at the location when and where the Plaintiff was arrested and each of whom it is believed was the commanding officer in charge of the policing operation at

the location when and where the Plaintiff and others were arrested.

59.    The actions, conduct, policies, practices, and customs described herein violated the Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

60.    The actions, conduct, policies, practices, and customs violated the Plaintiff's rights under the laws and Constitution of the State of New York including false arrest, malicious abuse of criminal process, assault, battery, excessive detention, excessive handcuffing, unreasonable and unnecessary fingerprinting and photographing, and retaliation for her exercise of her State constitutionally protected speech activity.

61.    The actions, conduct, policies, practices, and customs were negligent and were otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

62.    The Plaintiff suffered physical pain, anxiety, embarrassment, loss of liberty, emotional distress, psychological trauma, mental anguish. The Plaintiff continues to be anxious about whether, because of the toxic environment, she has been subjected to illnesses associated with exposure toxic environments.

63. The Plaintiff continues to suffer residual injuries and damages as a consequence of the actions, conduct, policies,

practices, and customs as described and the violation of her rights associated therewith.

64.    It is believed that there were New York City Police Officers [both line Officers and command Officers] who were part and parcel of the actions and conduct taken against the Plaintiff during the course of the entire transaction which describes the incident herein and component parts thereof including Command Officers and policy making Officers all or some of whom authorized and sanctioned the conduct practiced and taken against the Plaintiff and which propelled the actions and conduct, in the component parts thereof and their totality, taken against the Plaintiff.

65.    The actions and conduct of the New York City Police Officers as described above were propelled by the policies and practices of the New York City Police Department with respect to the planning and oversight of the Republican National Convention.

66.    In that regard and respect, the City of New York recklessly and with deliberate indifference to the First Amendment rights of people to peaceably assemble and engage in protected speech activity at the Republican National Convention unlawful and unconstitutional actions against innocent law abiding by-standers, who were observing police actions and/or were simply in the vicinity of police action including the arrest of those individuals and how they were treated when arrested and thereafter including the use of unnecessary and unreasonable force and

including unnecessary and excessive and unreasonable detention and, associated therewith, unreasonable and unnecessary terms and conditions of confinement [for example unnecessary and unreasonable and excessive handcuffing, unnecessary and unreasonable and unlawful fingerprinting and photographing, denial of access to adequate bathrooms, denial of access to counsel, denial of access to adequate nourishment and denial of access to medication and subjecting individuals to toxic detention facilities].

67.     The policies and practices created a situation where people, who were otherwise doing nothing impermissible, were subjected to arrest and denied their right to freely and lawfully engage in a peaceful assembly and demonstration and to otherwise be on the sidewalk doing nothing other than observing actions being taken by Police Officers toward other individuals and/or just being present.

68.     The actions and conduct and policies and practices were otherwise negligent and the proximate cause of the Plaintiff's injuries.

69.     The Plaintiff has no other adequate remedy at law but for the institution of this litigation.

                        FIRST CAUSE OF ACTION

70.     The Plaintiff reiterates Paragraph #'s 1 through 69 and incorporates such by reference herein.

71.     The Plaintiff was falsely arrested and falsely imprisoned

                                    15

in violation of the Plaintiff's rights under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and Fourth and Fourteenth Amendments to the United States Constitution.

72.  The Plaintiff suffered injuries and damages.

### SECOND CAUSE OF ACTION

73.  The Plaintiff reiterates Paragraph #'s 1 through 72 and incorporates such by reference herein.

74.  The Plaintiff was, _inter_ _alia_, falsely arrested and falsely imprisoned in violation of the laws and Constitution of the State of New York.

75.  The Plaintiff suffered injuries and damages.

### THIRD CAUSE OF ACTION

76.  The Plaintiff reiterates Paragraph #'s 1 through 75 and incorporates such by reference herein.

77.  The Plaintiff was subjected to unnecessary and unreasonable and excessive force in the form of unnecessary, unreasonable, and excessive handcuffing in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

78.  The Plaintiff suffered injuries and damage.

### FOURTH CAUSE OF ACTION

79.  The Plaintiff reiterates Paragraph #'s 1 through 78 and incorporates such by reference herein.

80.  The Plaintiff was subjected to assault and battery in the form of unnecessary and excessive and unreasonable handcuffing in

violation of her rights under the laws and Constitution of the State of New York.

81.   The Plaintiff suffered injuries and damages.

FIFTH CAUSE OF ACTION

82.   The Plaintiff reiterates Paragraph #'s 1 through 81 and incorporates such by reference herein.

83.   The Plaintiff was subjected to unreasonable, unnecessary, and excessive conditions of her seizure and detention in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution.

84.   The Plaintiff suffered injuries and damages.

SIXTH CAUSE OF ACTION

85.   The Plaintiff reiterates Paragraph #'s 1 through 84 and incorporates such by reference herein.

86.   The Plaintiff was subjected to unreasonable, unnecessary, and excessive conditions of her seizure and detention in violation of her rights under the laws and Constitution of the State of New York.

87.   The Plaintiff suffered injuries and damages.

SEVENTH CAUSE OF ACTION

88.   The Plaintiff reiterates Paragraph # s 1 through 87 and incorporates such by reference herein.

89.   The Plaintiff was subjected to excessive, unreasonable, and unnecessary detention in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution

and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

90.  The Plaintiff suffered injuries and damages.

EIGHTH CAUSE OF ACTION

91.  The Plaintiff reiterates Paragraph #'s 1 through 90 and incorporates such by reference herein.

92.  The Plaintiff was subjected to excessive, unreasonable, and unnecessary detention in violation of her rights under the laws and Constitution of the State of New York.

93.  The Plaintiff suffered injuries and damages.

NINTH CAUSE OF ACTION

94.  The Plaintiff reiterates Paragraph #'s 1 through 93 and incorporates such by reference herein.

95.  The Plaintiff was subjected to medical and health impairing facilities and conditions associated therewith in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983

96.  The Plaintiff suffered injuries and damages.

TENTH CAUSE OF ACTION

97.  The Plaintiff reiterates Paragraph #'s 1 through 96 and incorporates such by reference herein.

98.  The Plaintiff was subjected to medical and health impairing facilities and conditions associated therewith in violation of her rights under the laws and Constitution of the State of New York.

99.  The Plaintiff suffered injuries and damages.

ELEVENTH CAUSE OF ACTION

100.  The Plaintiff reiterates Paragraph #'s 1 through 99 and incorporates such by reference herein.

101.  The actions and conduct were taken herein for the collateral purpose of punishing the Plaintiff for the exercise of her First Amendment protected speech activities in violation of the Plaintiff's rights under the First Amendment to the United States Constitution.

102.  The Plaintiff suffered injuries and damages.

TWELFTH CAUSE OF ACTION

103.  The Plaintiff reiterates Paragraph #'s 1 through 102 and incorporates such by reference herein.

104.  The actions and conduct were taken herein for the collateral purpose of punishing the Plaintiff for the exercise of her speech activities in violation of the laws and Constitution of the State of New York.

105.  The Plaintiff suffered injuries and damages.

THIRTEENTH CAUSE OF ACTION

106.  The Plaintiff reiterates Paragraph #'s 1 through 105 and incorporates such by reference herein.

107.  The actions and conduct of the Defendant parties were negligent and the proximate cause of the injuries and damages that the Plaintiff suffered.

108.  The Plaintiff suffered injuries and damages.

FOURTEENTH CAUSE OF ACTION

109.   The Plaintiff reiterates Paragraph #'s 1 through 108 and incorporates such by reference herein.

110.   The Defendant City's policies and practices, which propelled the actions and conduct herein, including the policies related to the oversight and administration of the RNC demonstrations and marches over the course of time associated with the RNC  and including the handcuffing policies and practices and including the  conditions of detention oversight and administration policies and practices, violated the Plaintiff's rights as guaranteed under the First, Fourth and Fourteenth Amendments to the United States Constitution.

111.   The Plaintiff suffered injuries and damages.

FIFTEENTH CAUSE OF ACTION

112.   The Plaintiff reiterates Paragraph #'s 1 through 111 and incorporates such by reference herein.

113.   Independent   of   the   negligence   claims   against   the Defendant City and independent of the Monell based claims against the Defendant City, the Defendant City is responsible, under State law and based on State law jurisdiction and pursuant to State law and under the doctrine of respondeat superior, for the wrongful and unlawful acts and conduct of its agents and employees.

114.   The Plaintiff suffered injuries and damages.

SIXTEENTH CAUSE OF ACTION

115.  The Plaintiff reiterates Paragraph #'s 1 through 114 and incorporates such by reference herein.

116.  The actions and conduct of the Command Officers knowingly and/or recklessly and with deliberate indifference to the rights of the Plaintiff sanctioned and ratified the wrongful, unlawful, and unconstitutional conduct and actions of the subordinates officers in violation of the Plaintiff's rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution and, as well, the laws and Constitution of the State of New York.

117.  The Plaintiff suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction herein and thereafter:

> [a] Assume pendent party and pendent claim jurisdiction.
>
> [b] Enter appropriate declaratory and injunctive relief.
>
> [c] Award appropriate compensatory and punitive damages in an amount to be defined and determined.
>
> [d] Award reasonable costs and attorney's fees.
>
> [e] Award such other and further relief as the Court deems appropriate and just.
>
> [f] Convene and empanel a jury.

DATED: New York, New York
       July 17, 2005

Respectfully submitted,

_____
JAMES I. MEYERSON [JM 4304]
396 Broadway-Suite # 601
New York, New York 10013
[212] 226-3310
ATTORNEY FOR PLAINTIFF
 BY:_____